119 F.3d 5
 80 A.F.T.R.2d 97-5664, 97-2 USTC P 50,594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ARROWHEAD MOUNTAIN GETAWAY, LTD., Petitioner,
anda
Peggy KNOX, a partner other than the tax matters partner,
Gregory A. Knox, Tax matters partner, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 95-70868.
 United States Court of Appeals, Ninth Circuit.
 July 16, 1997.
 
 1
 Appeal from the Decision of the United States Tax Court, Tax Ct. Nos. 0973-2; Renato Beghe, Tax Court Judge, Presiding.
 
 
 2
 Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 On December 12, 1983, Gregory Knox formed Arrowhead Mountain Getaway Limited Partnership (the "Partnership"), which purported to provide investors with reasonably priced time share vacations and substantial tax benefits. James and Pamela Strebel previously owned the residence on Lake Arrowhead, California where the vacations were to take place. Pursuant to a Limited Partnership Agreement, investors of the Partnership would pay $2,500 to obtain a package consisting of one partnership unit and a prepaid reservation privilege at the Property. The reservation privilege guaranteed--for one year only--one three-day weekend at the property and the possibility of the use of the property twice for up to two weekdays ("Resort Privileges"). However, after the first year, the Partnership had no obligation to provide any Resort Privileges, and if a partner chose not to purchase Resort Privileges, the Partnership could repurchase the limited partners' partnership interest for $1.
 
 
 5
 The Strebels entered into three agreements with the Partnership whereby they conveyed 51.5 weeks of occupancy of the Lake Arrowhead residence for $309,000. At that time, the fair market value of the Property was less than $150,000. The terms of the purchase agreements required that the Property be divided into 52 time share weeks to be sold to the Partnership for $6,000 each with a down payment of $1,500 per week. The remainder of the payments were deferred for 40 years non-recourse under a zero coupon formula with interest compounding at 13.6% annually.
 
 
 6
 On August 29, 1991, the Commissioner of Internal Revenue issued notices of final partnership administrative adjustments to the Partnership for the years 1984 through 1988, disallowing all of the Partnership's claimed deductions.
 
 
 7
 Peggy Knox filed a petition with the United States Tax Court on behalf of the Partnership challenging the adjustments. Because the fair market value of the property interests purchased by the Partnership and the privileges purchased by the limited partners were much less than the price that the purchasers agreed to pay for their respective interests, and because neither the property interests nor the privileges purchased by the Partnership and the limited partners respectively would appreciate to a point where the fair market values would exceed the obligations due in forty years, the Tax Court found that there was no economic incentive for the Partnership to make its balloon payment rather than forfeit its interest in the property. Consequently, the Tax Court issued an order holding that the arrangements between the Partnership and the Strebels and between the Partnership and the limited partners were economic shams. Because we agree with the Tax Court's analysis, we affirm.
 
 
 8
 The Tax Court's determination that a transaction is lacking in economic substance is a factual determination that cannot be set aside unless clearly erroneous. Erhard v. Comm'r, 46 F.3d 1470, 1476 (9th Cir.), cert. denied, 116 S.Ct. 336 (1995); Sochin v. Comm'r, 843 F.2d 351, 353 (9th Cir.), cert. denied, 488 U.S. 824 (1988). In applying the sham transaction doctrine, courts determine whether the transaction had any practical economic effects other than the creation of income tax losses. In so determining, courts focus on whether there is a non-tax business purpose and on whether the transaction lacks economic substance. This Court has stated that these two areas of focus are not really different, but rather they are simply more precise factors to consider in the application of sham analysis. Sochin, 843 F.2d at 354.
 
 
 9
 Because the purchase price for the Property was more than double its fair market value as a residence, and because there was no realistic probability that the non-recourse note would ever be satisfied, we hold that the Tax Court's finding of an economic sham as to the Purchase Agreements was not clearly erroneous. Likewise, because the partners were paying sums for use of the property which were two to five times what it would have cost them to rent the Property or a comparable property, and because the partnership interests could be repurchased for $1 if the partners did not purchase all Resort Privileges offered while the Partnership had no obligation to offer any Resort Privileges, the Tax Court's finding that the sales of the partnership interests were economic shams was not clearly erroneous. Accordingly, the Tax Court's order is AFFIRMED.
 
 
 
 **
 The Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3